UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ROBERT MITCHELL, | |
|---|---|
| Plaintiff, | Case No. C10-2075-RAJ-BAT |
| v. | **REPORT AND RECOMMENDATION** |
| NURSE DIAZON, | |
| Defendant. | |

Before the Court is defendant's motion to dismiss and for summary judgment. Dkt. 20. Having reviewed the parties' pleadings and the record, the Court recommends the motion be **GRANTED** and the matter be **DISMISSED** with prejudice. Because the complaint should be dismissed as frivolous, the Court also recommends this dismissal count as a "strike" under 28 U.S.C. § 1915(g).

## BACKGROUND

In 2010, Washington State prisoner Robert Mitchell submitted a complaint alleging his civil rights were violated under 42 U.S.C. § 1983.[1] Dkt. 1. As the complaint was deficient, the Court granted plaintiff leave to file an amended complaint to cure the deficiencies. Dkt. 8. In April,

---

[1] Plaintiff proceeds pro se and in forma pauperis in this matter.

REPORT AND RECOMMENDATION - 1

2011, plaintiff filed an amended complaint naming "Nurse Diazon"[2] and David Oster as defendants. Dkt. 12. The amended complaint raised four claims: (1) Oster improperly classified plaintiff and denied him access to the law library; (2) plaintiff received inadequate clothing and no coat for use outside; (3) Nurse Diazon provided plaintiff inadequate medical treatment by failing to provide him with medications despite his requests; and (4) plaintiff's cell had no working outlet, there was no "level program," and the book selection was limited and included only Christian religious books. After reviewing the amended complaint, the Court dismissed all claims except for claim 3, against Nurse Diazon. Dkt. 17.

**FACTUAL CONTENTIONS**

Plaintiff's claim against Nurse Diazon arises from his incarceration in the Snohomish County Jail between April 9, 2010, and May 11, 2010. *See* Dkts. 21 and 22. The amended complaint alleges:

> 3. Inadequate medical treatment by Nurse diazon to be described in this Civil complaint with Supporting Exhibits G1-G5 resulting in choking pain and discomfort Night chills and in Migraine headache pain during also a lack of thyroid Medicine called 'thyroxine SynthRoid' for the complete stay at Snohomish despite numerous requests at Cell front to diazon and many requests by Kite.

Dkt. 12 at 3. Although the amended complaint refers to Exhibits, G1-G5, plaintiff failed to attach them and thus has failed to present any facts describing plaintiff's claim against Nurse Diazon. After defendant filed her motion to dismiss, plaintiff filed an objection in which he states he "has no objection to Nurse Diazon being dismissed at this time as long as Ms. Nygaard

---

[2] Defendant indicates there is no person named Nurse Diazon and assumes plaintiff intended to name Nurse Dizon. For the sake of consistency, this Report will refer to Nurse Dizon as Nurse Diazon.

and Sandra Needham will be available for questioning." Dkt. 25.[3] He also contends that "Plaintiff will prove through discovery that in fact he did not receive his Thyroid medicine until May 6th." Plaintiff also argues in his objection that the case should not be dismissed for lack of exhaustion, because he "made a good faith effort to use the Grievance system." *Id.*

In contrast to plaintiff's barebones allegation, defendant presents a much fuller picture of what transpired during plaintiff's stay at the Snohomish County Jail ("the jail"). As set forth in defendant's motion and supporting declarations, plaintiff was booked into the jail on April 9, 2010. Dkt. 22 at 4. At booking, jail staff questioned plaintiff about his medical needs and learned he had received medications at Monroe Correctional Center (MCC) from which he had just arrived. *Id.* The jail medical staff determined none of plaintiff's medications required immediate dispensing. To confirm what medications MCC was dispensing to plaintiff, the jail staff faxed MCC a request for medical information. *Id.* at 5. This is a standard procedure because the jail has found newly booked inmates are often incorrect about their medications. *Id.*

On April 15, 2010, MCC informed the jail plaintiff was receiving Citilopram 60 mg. for depression, Cardura for high-blood pressure, Levothyroxine 112 mg. for thyroid, and Trazadone for insomnia. The jail ordered the first three medications from its pharmacy. The jail did not order Trazadone because it is the jail's policy not to dispense Trazadone at the dose plaintiff was receiving as Trazadone at that dosage is used as a sleeping pill. *Id.* Plaintiff's jail medical records establish he began receiving the three medications on April 17, 2010, and that he continued receiving them until he left the jail on May 11, 2010. *Id.* According to defendant, the jail dispensed the same medications plaintiff received at MCC, with the exception of Trazadone,

---

[3] Plaintiff's objection was filed by defendant at Dkt. 25 as plaintiff had improperly sent it to the Attorney General instead filing it with the Court. Plaintiff subsequently filed the same objection on October 25, 2011 with the Court. *See* Dkt. 26.

REPORT AND RECOMMENDATION - 3

and the 8 day gap between booking and dispensing the medications had no negative impact on plaintiff's medical condition. *Id.*

Nurse Diazon is a Licensed Practical Nurse (LPN) at the jail. She avers she had no contact with plaintiff during the month of April 2010, and that her contact with plaintiff was limited to May, 2, 3, 4, 6, 7, 10, and 11, 2010, when she dispensed medications to him. *Id*. Nurse Diazon also avers she cannot write prescriptions for inmates, her job involves dispensing medications to inmates as prescribed by other medical staff, and that if an inmate has a medical complaint, she encourages the inmate to fill out a "kite." *Id.*

Here, plaintiff submitted numerous kites and grievances regarding his medical care. Dkt. 21, Exhibits D and E. The jail's grievance procedure has three steps or levels of review. At step 1, inmates must submit their grievances to a shift commander, supervisor or administrative or classification officer, depending on the nature of the grievance. *See e.g.* Dkt. 21, exhibit E at 5. If the grievance is not resolved, inmates may then submit the grievance to a manager, at step 2. *Id.* And finally, to exhaust the administrative grievance process, an unresolved grievance must then be submitted to the jail Director at step 3. *Id.* Here, plaintiff submitted six grievances, five of which were presented up to step 1, and one of which was presented up to step 2. Plaintiff however did not pursue his administrative remedies beyond step 2 and did not present any of his grievances to the jail Director at step 3.

## DISCUSSION

**A.     Summary Judgment Standard**

A court may grant a motion for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

1 as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the Court is required to draw all inferences in a light most favorable to the nonmoving party. *Id*. at 248. The Court may not weigh the evidence or make credibility determinations. *Id*.

**B.      Section 1983 Standard**

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## C. Eighth Amendment

Plaintiff alleges Nurse Diazon violated his rights by providing "inadequate medical treatment." As an initial matter, defendant contends Nurse Diazon is "not an entity who can be sued" under § 1983. However, Nurse Diazon states she is a nurse employed at the jail. Accordingly, like other medical professionals who contract with jails to provide medical services, the Court finds she acted under color of state law and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42 (1988).

The government has an obligation to provide medical care for prisoners under the Eighth Amendment which proscribes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To establish "deliberate indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *Id.* at 104. A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. *Id*. at 1060. A difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Further, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. *McGuckin*, 974 F.2d at 1060; *Shapely v. Nevada Bd. of State Prison*

*Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Under these standards and the undisputed facts, Nurse Diazon is entitled to summary judgment. First, the undisputed facts establish Nurse Diazon properly performed her duties and was not deliberately indifferent to plaintiff's medical needs. Plaintiff did not receive medications between April 9, 2010 and April 17, 2010. As an LPN, Nurse Diazon had nothing to do with this; in fact, Nurse Diazon was not even working in plaintiff's unit during that time period and had no contact with him. Nurse Diazon worked in plaintiff's unit on certain days in May 2010, and on the days she worked, she dispensed medications to plaintiff. Under these circumstances, there is absolutely nothing to show Nurse Diazon purposefully ignored or failed to respond to plaintiff's medical needs.

Second, it may be plaintiff is unhappy with the type or amount of medications the jail dispensed. However, plaintiff is barking up the wrong tree by suing Nurse Diazon. As an LPN, Nurse Diazon had nothing to do with prescribing the types and amounts of medications plaintiff received. In any event, as noted above, any difference of opinion between plaintiff and the jail medical staff regarding proper medical treatment does not give rise to a § 1983 claim. And finally, plaintiff has presented nothing showing the medical care he received at the jail was harmful, or to counter defendant's declarations that plaintiff suffered no medical harm as a result of the treatment he received at the jail.

In sum, Nurse Diazon has demonstrated, through her evidence and arguments, that she was not deliberately indifferent to plaintiff's medical needs.[4] The limited evidence and argument presented by plaintiff does not create a genuine issue of material fact for trial. In fact, plaintiff

---

[4] Having found defendant did not violate plaintiff's constitutional rights, the Court need not further address defendant's qualified immunity argument. *See Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, (2001)), cert. denied, ––– U.S. –––, 130 S.Ct. 1047, (2010).

indicates his action against Nurse Diazon should be dismissed and that he would like to investigate claims against other individuals not named in his amended complaint. Dkt. 25 Accordingly, Nurse Diazon is entitled to summary judgment as a matter of law with respect to plaintiff's Eighth Amendment claim.

The Court notes the record does not show plaintiff received a summary judgment notice under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). However, a Court may take judicial notice of its own records, *sua sponte*, to determine whether plaintiff has received a *Rand* notice in prior litigation and thus has an understanding of Rule 56's summary judgment requirements. *Id.* at 961-62. Where the record regarding a plaintiff's prior litigation shows the plaintiff has an understanding of Rule 56's requirements, the failure to give a *Rand* notice is deemed harmless. *Id. at* 961; *see also Parmalee v. Leroy*, 243 F.3d 548 (9th Cir. 2000). (unpublished decision).

The Court's records show plaintiff understands Rule 56's summary judgment requirements. In 2010, plaintiff filed a § 1983 action in this Court in C10-5436-RBL. After the Court issued *Rand* warnings in that case, defendants moved for and the Court granted summary judgment in favor of defendants and dismissed the case. In 2009, plaintiff filed another § 1983 action in this Court in C09-5080-BHS. After the Court issued *Rand* warnings (Dkt. 56) defendants moved for and the Court granted summary judgment in favor of defendants and dismissed the case. And finally, the Court's records show plaintiff filed yet another § 1983 action in 2008 under C08-980-MJP. After the Court issued *Rand* warnings (Dkt. 55) defendants moved for and the Court granted summary judgment in favor of defendants and dismissed the case.

In each case above, plaintiff filed a response objecting to summary judgment and setting

forth arguments in opposition. In one case, plaintiff also attached exhibits in support of his opposition to summary judgment. In no case, did plaintiff fail to respond or acquiesce to a motion for summary judgment. Plaintiff's understanding of Rule 56's requirements is also evidenced in this case. As in the past, plaintiff filed an objection to defendant's motion for summary judgment setting forth arguments in opposition. In short, plaintiff's litigation history of lodging at least one § 1983 action a year between 2008 and 2010, and the objection he filed against the instant motion establish he understands Rule 56's requirements. Accordingly the failure to formally provide plaintiff a *Rand* warning in this case is harmless.

**D.      Failure to Exhaust Administrative Remedies**

Even if the Court were to conclude the failure to give a *Rand* warning in this case was not harmless, the matter should nonetheless be dismissed on the grounds plaintiff has failed to properly exhaust the administrative remedies available to him at the jail, i.e., plaintiff filed six grievances regarding his medical care but never exhausted his remedies by presenting any of his grievances to the jail director.

The Prison Litigation Reform Act (PLRA) created a requirement that prisoners exhaust administrative remedies within the prison grievance system before filing a civil-rights lawsuit regarding prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). According to the United States Supreme Court, such "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement applies even where the relief sought—monetary damages—cannot be granted by the administrative process. *Id.* at 85; *Booth v. Churner*, 532

U.S. 731, 733 (2001). Administrative exhaustion is required for any suit challenging prison conditions, not just for suits under § 1983. 42 U.S.C. § 1997e(h); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requisite exhaustion is "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 548 U.S. at 90–91. Failure to satisfy the PLRA exhaustion requirement is an affirmative defense as to which the defendant has the burden of proof.

Defendant has carried her burden of proof of showing plaintiff failed to properly exhaust available administrative remedies. As noted above, there is no dispute the jail has a 3 step grievance process, and that plaintiff failed to pursue any of the six grievances regarding this case beyond step 2 of the 3 step process. In his objection to defendant's motion, plaintiff did not deny he failed to exhaust his administrative remedies and did not present any evidence disputing defendant's assertions. Dkt. 25. Rather, citing to *Wilwording v. Swenson*, 404 U.S. 249 (1971), plaintiff contended the "exhaustion-of-state-remedies rule not be stretched to the absurdity of requiring exhaustion." *Id.* The *Wilwording* decision addresses the exhaustion doctrine as it pertains to habeas corpus actions, and thus has no relevance here. Plaintiff also contends he made a "good faith effort to use of the Grievance System" but this does not explain why he failed to present his grievances to the jail director and exhaust his remedies. Accordingly, the Court finds plaintiff failed to properly exhaust his available administrative remedies as required by the PLRA.

Normally where a complaint is dismissed for failure to exhaust administrative remedies, dismissal should be without prejudice. Dismissal without prejudice makes sense when a prisoner still has the opportunity to properly exhaust his administrative remedies. In such a situation, the

prisoner should be allowed to exhaust his remedies and then reinitiate a § 1983 action if his claims are not remedied at the administrative level. Here, however, plaintiff no longer has the opportunity to properly exhaust his administrative remedies, as the time for plaintiff to submit his grievance to the jail director has come and gone.

Accordingly, as the time to properly exhaust administrative remedies has long passed, plaintiff's complaint should be dismissed with prejudice. This course of action would be consistent with the Supreme Court's decision in *Woodford v. Ngo*. In that case, the Supreme Court addressed whether a prisoner could avoid the PLRA's exhaustion requirement by failing to seek administrative review within the period of time specified in the institution's procedures. The plaintiff argued § 1997e(a) should be interpreted to mean that the doors of the federal courthouse were open as soon as the administrative remedies were no longer available, regardless of the cause of the unavailability. The Supreme Court roundly rejected the argument that "[b]are unavailability suffices even if this results from a prisoner's deliberate strategy of refraining from filing a timely grievance so that the litigation of the prisoner's claim can begin in federal court." 548 U.S. at 88.

In short, plaintiff filed numerous jail grievances in 2010 regarding the alleged violations. Although he was obviously aware of the grievance procedures and in fact sought administrative review up to step 2, he inexplicably failed to exhaust his administrative remedies by failing to seek review at step 3. As the time to properly exhaust administrative remedies has long passed, and plaintiff no longer can "properly" exhaust his remedies as required by *Woodford v. Ngo*, it would be nonsensical to dismiss this matter without prejudice. Accordingly, the complaint should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court recommends the matter be **DISMISSED** with prejudice. Plaintiff's allegations against Nurse Diazon are wholly unsupported and frivolous. If this finding is adopted, the Court recommends the dismissal count as a "strike" under 28 U.S.C. § 1915(g). If this finding is rejected and dismissal is based entirely on plaintiff's failure to exhaust his administrative remedies, the Court recommends the dismissal not count as a "strike." Any objections to this Recommendation must be filed and served upon all parties no later than **November 21, 2011.** This matter should be set for the Court's consideration on November 21, 2011. The failure to timely object may affect your right to appeal.

The Clerk is directed to send plaintiff and the Honorable Robert S. Lasnik a copy of this Report and Recommendation. A proposed Order accompanies this Report and Recommendation.

DATED this 31st day of October, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge